Lindsay Hoopes (CA SBN 271060)
PO BOX 3600
Yountville, CA 94599
415-240-2644
Email: lindsayhoopes@comcast.net


Attorney for Defendant


UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDRES GOMEZ,<br><br>                    Plaintiff,<br><br>          v.<br><br>HOOPES VINEYARD, LLC, a California<br>Limited Liability Company,<br>                    Defendant. | Civil Action No. 3:21-cv-08776 EMC<br><br>The Honorable Edward M. Chen<br><br>POINTS OF AUTHORITIES TO<br>DEFENDANT'S MOTION TO DIMISS<br>[FED. R. CIV. P. 12(B)(1); FED. R. CIV. P.<br>12(B)(6)] AND DECLINE<br>SUPPLEMENTAL JURISDICTION<br><br>Complaint Filled: 11/12/2021<br>Hearing Date: March 3, 2022<br>Time: 1:30<br><br>Date:   February 1, 2022 |

## POINTS AND AUTHORITIES TO DEFENDANT'S MTION TO DISMISS

### I.   INTRODUCTION

Plaintiff is a serial litigant who has filed 108 cases in the Northern District of California since 2021, including numerous website-related ADA cases against other wineries in Napa Valley in the last ten weeks, with materially identical ADA-based lawsuits alleging inaccessible websites. Plaintiff has also filed a staggering 969 ADA-related claims in the federal courts since 2015. In this action, Plaintiff has filed suit against Hoopes Vineyard, LLC asserting that Defendant operates a website in violation of Title III of the American with Disabilities Act, 42 U.S.C. § 12181, et. seq, and the California Unruh Civil Rights Act, Cal. Civ. Code § 51, et. seq.

Defendant Hoopes Vineyard, a family-owned winery with a primary place of business in Napa Valley, California, seeks dismissal pursuant to Federal Rules of Procedure 12(b)(1) and 12(b)(6). Defendant also request the court to decline to exercise supplemental jurisdiction over Plaintiff's State law claim, or, in the alternative, dismiss the claim upon dismissal of the federal ADA claims.

Plaintiff lacks constitutional standing. Plaintiff does not establish injury-in-fact and without subject matter jurisdiction, this Court must dismiss the Complaint pursuant to Rule 12(b)(1). Plaintiff's complaint is also devoid of factual elaboration, demanding dismissal for failure to state a claim pursuant to Rule 12(b)(6). Defendant's State Law claim predominates over the federal claim; accordingly, the Court should decline to exercise supplemental jurisdiction even if dismissal is not granted as to the federal claims.

### II.   **BACKGROUND**

Plaintiff Andres Gomez ("Plaintiff") alleges he is legally blind and cannot access websites without the assistance of screen-reader software. Comp., ¶ 1. Plaintiff lives in Miami. Civil Cover Sheet, p.1, § 1.

Since 2015, Plaintiff has filed 969 ADA-accessibility cases throughout the federal court system. *See* Declaration of Lindsay Hoopes, ¶ 12. Since 2021, Plaintiff has filed 108 website-related ADA accessibility cases in the Northern District of California, alone. *Id*., ¶ 12. In the past ten weeks, Plaintiff has filed numerous, carbon-copy complaints against businesses in Napa County, targeting wineries, real estate agents, and lodging providers. *See*, e.g., *Gomez v. Smith*,

Case No. 3:21-cv-07154-JCS (N.D. Cal.); *Gomez v. Magliocco Group Inc.,* Case No. 3:21-cv-07148-JCS (N.D. Cal.); *Gomez v. Jill Marie Levy dba Napa Homes and Estates*, Case No. 3:21-cv-07343-EMCCC (N.D. Cal); *Gomez v. David P. Como dba Napa Valley Real and Vineyards*, 3:21-cv-09574 (N.D. Cal). Some of those cases are simultaneously before this Court.

In his complaint, Plaintiff avers that he was a "prospective customer" with hopes to "access" the "goods and services of the Hoopes Vineyard, LLC." Comp., ¶ 16. Plaintiff alleges he visited the website, https://www.hoopesvineyard.com, in March 2021 and August 2021, to "**potentially** visit this location" to "purchase wine or **do some wine tasting or potentially make my own wine**." Comp., ¶ 4, 17. Plaintiff noted that his visit to the website was prompted by a "potential[]" visit to Northern California, where unidentified members of his family live. Comp., ¶ 17. Plaintiff did not provide any additional support for a planned visit to California. Comp., ¶ 17.

Plaintiff purports that when he navigated the above site, he encountered "numerous design faults that prevented him from navigating the site successfully using SRS." Comp., ¶ 18. Plaintiff then lists three supposed "accessibility barriers": A) "images on the website lack text equivalent"; B) "form elements that are not identified with functional text readable by SRS"; and C) "[t]he visualization of the webpage contains impermissibly low contrast enabling differentiation of background and foreground elements. Comp., ¶ 18. Plaintiff did not provide further detail about the barriers: ie, where they were on the website, how they disabled his access to Hoopes Vineyard, or what he intended to utilize on the website, but could not. Plaintiff merely concluded that the alleged barriers "rendered the ostensibly 'accessible' elements inaccessible as a result of difficulty and confusion navigating the numerous inaccessible elements." Comp. ¶ 19.

The enumerated barriers were not identified in connection with specific provisions of the WCAG, or any other guidelines relating to website accessibility. Plaintiff's enumerated list of alleged barriers are also not identified in connection with any specific images, pages, or features of the Hoopes Vineyard website. Plaintiff did not aver that his disability rendered him unable to use the website to access specific good, services, facilities. For example, Plaintiff indicates that he uses an SRS reader to navigate websites. Plaintiff does not allege, however, that the reader cannot read "low contrast images" or that, for example, the form element was a material link to a service, good, or facility. Indeed, he does not say what any singular form element "is." Plaintiff did not aver that he attempted to access any goods, services, or facilities of Defendant but/for the barriers on the website. Plaintiff baldly notes that the barriers "prevented him from navigating the site successfully." Comp., ¶ 18.

Plaintiff never directly states that his disability prevented him, personally, from doing anything on the website. Nevertheless, Plaintiff summarily concludes that he was "denied the full use and enjoyment of the facilities, goods and services offered by Defendant as a result of the accessibility barriers on the website." Comp., ¶ 21. Plaintiff does not, however, indicate what the "facilities, goods, and services" are that he could not access or why he was unable to access them. *See generally* Comp.

Plaintiff continues to aver that he is "deterred from returning to the **website** as a result of these prior experiences." Comp., ¶ 24. Plaintiff acknowledges he is a tester who "will **return to the website** to avail himself of its goods and/or services," but that he is currently deterred from **returning to the website** because of the "barriers on the website." Comp., ¶ 27, 28. Plaintiff did not articulate an intent to return to a physical space operated by Hoopes Vineyard, LLC or California, generally. Rather, Plaintiff singularly maintains that he is deterred from "returning to the website." Compl., ¶ 28 ["Plaintiff will return to the website to avail himself of its goods and/or services…]; Compl., ¶ 24 [Plaintiff "has been deterred from returning to the website…"]

Owner Lindsay Hoopes has submitted a declaration noting that Hoopes Vineyard operates multiple physical locations, and most are not open to the public. *See* Declaration of Lindsay Hoopes, ¶ 7. Defendant does not offer wine tastings or make wine for private individuals, despite Plaintiff's allegations that these were the services sought in visiting the Hoopes website. Compl., ¶ 17 [Plaintiff visited the website …. In search of a winery/wine vineyard to potentially visit this location to purchase wine or do some wine tasting or potentially make my own wine…"]. Declaration of Lindsay Hoopes, ¶ 6. Lindsay Hoopes confirms that Plaintiff has never visited any facility associated with Hoopes Vineyard, called the property, attempted a booking, purchased wines from, or otherwise patronized the winery, in any capacity. Declaration of Lindsay Hoopes, ¶ 11. Defendant maintains the website in primary part to facilitate online sales for shipment directly to customers in their place of residence and provide information about the wines, generally. Declaration of Lindsay Hoopes, ¶ 8.

Defendant is aware that Plaintiff has filed a near carbon-copy of the complaint in this case as to dozens of wineries in Napa Valley over the last ten weeks, as well as other small businesses with a principal place of business in Napa County. Declaration of Lindsay Hoopes, ¶ 12. The complaints all allege, in essence, that Plaintiff was unable to navigate the winery's (or business') website, and was, a result, deterred from returning to the website. *See, e.g., Gomez v. Smith*, Case No. 3:21-cv-07154-JCS (N.D. Cal.); *Gomez v. David P. Como dba Napa Valley Real and*

*Vineyards*, 3:21-cv-09574 (N.D. Cal).

Plaintiff filed the above-captioned complaint on November 11, 2021. The parties stipulated by joint agreement to receive a response or responsive motion by February 1, 2022.

Because Plaintiff does not identify an injury-in-fact, Defendant hereby requests that this Court dismiss the Complaint pursuant to Federal Rule 12(b)(1). Plaintiff does not allege a bona fide intent to visit any physical location operated by Hoopes Vineyard. Plaintiff does not allege that he was unable to access the facilities, goods and services of a physical location as required by the ADA; rather, Plaintiff alleges that he is deterred from returning to the website. Plaintiff does not identify how, why, or what he was unable to do because of the alleged barriers on the website. Plaintiff also does not link the inability to use the website to any "terrestrial based" good, service, or facility. Instead, Plaintiff summarily states that he was unable to successfully "navigate" the website. No more, no less. Plaintiff accordingly fails to show elements of standing, including the intent to patronize a physical space, imminence, that he was personally disabled from accessing goods, services, and facilities, and/or a nexus between the alleged barriers and access to goods and services of a physical space. On these bases, independently and cumulatively, Plaintiff fails to establish an injury-in-fact.

Plaintiff fails to state a claim because Plaintiff fails to provide factual support for his threadbare Complaint. Accordingly, Defendant also seeks dismissal pursuant to Rule 12(b)(6).

Defendant additionally requests this Court to decline supplemental jurisdiction as to Defendant's State Law claim.

## I.   **DISCUSSION**

**A.**  Plaintiff Fails to Establish Standing so the Court Must Dismiss the Entire Complaint Pursuant to Rule 12(b)(1).

1.     Plaintiff bears the burden to establish Article III standing.

Plaintiff bears the burden to prove the existence of subject matter jurisdiction. *Chandler v. State Farm Mut. Auto Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). A jurisdictional attack pursuant to Rule 12(b)(1) motion may be facial or factual. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).  A defendant may request dismissal based on a facial deficiency in the complaint *or* provide extrinsic evidence disputing the truth of statements otherwise supporting federal jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In resolving a factual attack, the district court may review evidence beyond the complaint without converting a motion pursuant to 12(b)(1) into a motion for summary judgment.

*Meyer, supra*, 373 F.3d at 1039. A court may consider affidavits and other testimony to resolve factual disputes related to jurisdiction. *Id*.

> 2.      The case must be dismissed because if a Plaintiff fails to establish Constitutional standing.

Plaintiff has failed to establish standing; thus, this Court *must* grant Defendant's motion to dismiss pursuant to Rule 12(b)(1). *McCauley v. Ford Motor Co.,* 264 F.3d 952 (9th Cir. 2001). Standing is a requirement without exception for federal court jurisdiction. Plaintiff may not be heard because he cannot satisfy this burden. *Spokeo Inc. v. Robins,* 578 U.S. 330, 337-38 (2016).

The Supreme Court does not equivocate about the importance of standing: "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 37 (1976). Article III demands that a court dismiss, *sua sponte*, any case or complaint that does not meet this constitutional threshold. *Valley Forge Christian Coll. V. Americans United for Separation of Church and State, Inc*., 454 U.S. 464, 471 (1982). Thus, while courts oft have broad discretion at the pleading stage, a court must nevertheless dismiss a complaint pursuant to 12(b)(1) if a plaintiff, such as the Plaintiff here, fails to establish legal standing. *See, e.g., Cole v. Oroville Union High Sch Dist*., 228 F.3d 1092, 1098 (9th Cir. 2000).

> 3.      Plaintiff fails to demonstrate injury-in-fact.

Plaintiff fails to establish the first element of standing: Plaintiff does not, and cannot, establish an injury-in-fact.

At an "**irreducible constitutional minimum**," a plaintiff must establish: (1) injury-in-fact, (2) traceable to the challenged conduct of the defendant, and (3) an injury that can be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robbins,* 578 U.S. 330, 337-38 (2016). Plaintiff bears the burden to "clearly allege facts" demonstrating all three elements. *Id*. at 338. An injury-in-fact must be "concrete and particularized." *Id*. at 338. An injury is "particularized" only if the wrongdoing actually "affect[s] the plaintiff in a personal and individual way." *Id*. An injury is "concrete" if it "actually exist[s]" – that is, it *cannot* be hypothetical or conjectural as a matter of law. *Id*.

Standing under the ADA demands additional nuances to prevail on the merits. Unlawful injury-in-fact under the ADA "occurs when features of an accommodation" prevent an individual, because of his disability, from the "opportunity […] to participate in or benefit from the goods,

services, facilities, privileges, advantages, or accommodation of an entity." 42 U.S.C. § 12182(b)(1)(A)(i). Therefore, to establish injury, a plaintiff in this context must plead that 1) defendant is disabled, 2) defendant is a private entity that owns, leases, or operates a place of public accommodation and 3) that plaintiff was denied a public accommodation by the defendant because of his disability. *Ariz. Ex rel. Goddard v. Harkins Amusement Enters.*, 603 F.3d 666, 670 (9th Cir. 2010).

> a. Plaintiff's does not demonstrate a bona fide intent to visit a physical location associated with Defendant; thus, Plaintiff's injury is not "actual" or "concrete."

Plaintiff cannot establish that he was denied access to a place of public accommodation because Plaintiff never had any actual intent to patronize a physical location operated by Defendant. Plaintiff must demonstrate an actual intent to visit a physical location to establish actual injury under the ADA. That is because an injury must "actually exist" to confer standing, and an injury under the ADA can only "exist" in connection with a "place of public accommodation." See, e.g., *Robles v. Domino's Pizza, LLC* 913 F.3d 898, 905 (9th Cir. 2019). Courts may only apply the ADA to a *website* insofar as the barriers on the website disable a plaintiff's access from visiting a "place of public accommodation." *Robles, supra,* 913 F.3d at 905; *Langer v. Pep Bos, supra*, 2021 WLL 148237, at •10.

Plaintiff's Complaint clearly exposes that his interest in visiting the Hoopes Vineyard website was part of a hypothetical visit to Napa Valley at best, and a Title III fishing campaign at worst. Plaintiff never had a *legally* bona fide intent to visit *any* physical location in Napa Valley, let alone one operated by Defendant. In this case, Plaintiff never visited Defendant; accordingly, Plaintiff must demonstrate that he intended to visit but/for he was deterred because of his personal knowledge of barriers related to his disability. *Chapman v. Pier 1 Imports (US), Inc.*, 631 F.3d 939, 944 (9th Cir. 2011). Plaintiff was obviously not dissuaded from visiting Hoopes Vineyard because the website made access untenable; Plaintiff never visited Hoopes Vineyard because he never had any concrete plans to travel to the physical location in the first instance.

In his own words, Plaintiff concedes his intent to visit Hoopes Vineyards was theoretical: his intent to visit *Northern California* – not *even* Napa Valley, and not Hoopes Vineyard, more significantly - was nothing more than a "potential visit." Comp., ¶ 18. "Potential" means something "existing in possibility." (See, e.g., Merriam Webster, *available at*, https://www.merriam-webster.com/dictionary/potential, last visited February 1, 2022. A

"possibility" is not, by any linguistic calculus, a statement of concrete or *actual* intent.

Plaintiff's only evidence of "concreteness" to visit Hoopes Vineyard is that he has family, of unknown relation, and unknown domicile, in the greater Northern California geographic region. Comp., ¶ 18. Northern California is far more expansive than Napa County, and exponentially more expansive than Hoopes Vineyard.  It is an outrageous leap of logic that an expressed intent to visit Northern California - a large, expansive, and populous geographic region that covers most of the land mass of California – could be reasonably synonymous with a concrete intent to visit Napa Valley, let alone a specific *location* in Napa Valley, such as Hoopes Vineyard. Plaintiff never offered evidence of actual travel plans, dates. hotels, or airline tickets establishing proof of an actual intent to visit.

An injury-in-fact must be actual or imminent, it "cannot be conjectural or hypothetical." *Lujan, Secretary of the Interior v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). "[S]ome day" intentions of visiting a facility will not support standing. *Lujan,* 504 U.S. at 564; *Chapman v. Pier 1 Imports (US), Inc.*, 631 F.3d 939, 953 (9th Cir. 2011). A Plaintiff must demonstrate "concrete plans" or some factual proof of when "that some day will be." *Lujan,* 504 U.S. at p. 564. Given that Plaintiff is a resident of Miami and has presumably never travelled to Northern California (because he did not allege that he had), Plaintiff's "intent" cannot be afforded greater significance or likelihood than the speculative expression that it is. At best, on these facts, Plaintiff alleges that if he were to go to Napa, which he might do because he has some family nearby, Plaintiff would be deterred from visiting Hoopes Vineyard because he was unable to access information on the website. It is hard to imagine a more hypothetical and attenuated injury than the one alleged in this Complaint.

Of particular note is that many of the services Plaintiff sought from his "visit" are not services provided Hoopes Vineyard; thus, Plaintiff either did not know anything about the business enough to demonstrate a genuine intent to visit at the time of his alleged injury, he recycled an intent statement from another case, or would never have visited Hoopes Vineyard after reviewing the website and discovering that Hoopes Vineyard did not actually offer any of the services he sought to patronize. Comp., ¶ ["do some wine tasting or potentially make my own wine"]; Declaration of Lindsay Hoopes, ¶ 6. Neither of these services or goods are offered on the website referenced in Plaintiff's Complaint. In all instances, the Complaint is subject to dismissal for lack of injury, either because he did not intend to actually visit, a failure to demonstrate the website prevented him from visit, or he did not plead with specificity. Under a facial attack,

Plaintiff's Complaint is further deficient with minimal external factual review.

Plaintiff does not show that that he had bona fide intentions to visit Hoopes Vineyard but did not because of the website. Plaintiff cannot show this because he never had actual plans to visit Napa in the first instance. Since intent never reasonably existed, Plaintiff would not be able to cure this defect on leave to amend. As a result, Plaintiff cannot establish injury and the Complaint must be dismissed for lack of standing.

> b. Plaintiff does not establish that he is deterred from visiting a physical place, as required for standing under the ADA.

Plaintiff never alleges deterrence from a visiting a specific *physical* location. Thus, Plaintiff fails to establish standing on this basis as well. As discussed, *supra*, to establish injury under the ADA, a plaintiff must demonstrate that he did not receive equal access to a place of "public accommodation." In the context of an ADA-website accessibility claim, he must show that access to the physical space – or goods, or services thereof - was compromised because of accessibility barriers on the company website. *Robles v. Domino's Pizza, LLC* 913 F.3d 898, 905 (9th Cir. 2019). Under a theory of deterrence, a plaintiff must show that he is deterred from patronizing the place of physical accommodation, or the goods and services thereof, because of his knowledge of existing accessibility barriers. *Chapman, supra*, 631 F.3d at p. 960 [deterrence is injury when an ADA" plaintiff is "deterred from attempting to gain access to the public accommodation because of knowledge of a barrier]. In other words, a plaintiff must be deterred from accessing the place of physical accommodation, and not the website itself, to establish standing.

Strikingly, Plaintiff *never* alleges injury or deterrence in connection with a physical location operated by Hoopes Vineyard. Plaintiff states *all* alleged injuries and intended areas of "access" in terms of the *website* and *not* a physical place of accommodation: (1) Plaintiff was injured because he was unable to "**successfully navigate the website,**" Comp. ¶ 8; (2) Plaintiff "would have been able to **navigate the website**" if the website had been designed appropriately; (3) Plaintiff is deterred from "returning to the **website**", Comp. ¶ 26; (4) Plaintiff is a tester and will "**return to the website** to avail himself of **its goods and services**" once it is represented to him that the Hoopes Vineyard "***website* is accessible**" Comp., ¶ 28; (5) Defendant's policy and practice deny Plaintiff "**access to the website**" Comp., ¶ 32. Plaintiff never alleges injury as to attempting to get to access anything other than the website itself. Plaintiff never so much as

indicates the physical address of the location he wanted to visit.

A website is not a physical space and does not, without exhibiting a nexus to a physical space, confer standing under the ADA. Websites are not places of "public accommodation" in their own right. *Langer v. Pep Boys, Manny Moe & Jack of California,* No: 20-cv-06015-DMR, 2021 WL 148237, at *5 (N.D. Cal. Jan. 15, 2021). A statement that Plaintiff seeks access to the *website*, and is deterred from returning to a website, vs. access to a physical space *via* the website, is fatal to standing under the ADA. A website can only confer protection under the ADA if a website creates barriers of access *to a physical location*.

If Plaintiff is not deterred from visiting Hoopes Vineyard, but rather just the website, Plaintiff does not have standing as a matter of law under the ADA. *See, e.g. Chapman*, 631 F.3d at p. 960-961 [denying plaintiff standing as to barriers he did not experience because he acknowledged they did not deter him from returning to the store]; *Ariz. Ex rel. Goddard v. Harkins Amusement Enters.*, 603 F.3d 666, 670 (9th Cir. 2010) [deterrence or injury relating to physical location required element for standing under ADA].) Constitutional injury under the ADA must flow from a physical location. It cannot flow from the website alone. Plaintiff must show interest in access to or returning to the physical location.

*Langer v. Pep Boys* is instructive. *Langer v. Pep Boys, Manny Moe & Jack of California,* No: 20-cv-06015-DMR, 2021 WL 148237, at *5 (N.D. Cal. Jan. 15, 2021). Although addressing additional nexus issues, the *Langer* court dismissed the complaint because plaintiff could not describe how the allegedly inaccessible video content on the website disabled his access to the goods and services of a physical store. 2021 WL 148237, at •6. Although defendant had retail locations, the plaintiff did not adequately link the articulated website deficiencies to the physical stores, the services of those stores, or describe that he was deterred from visiting the stores because of those deficiencies. As written, the complaint essentially attributed injury to the website as a service itself but did not provide the requisite nexus to a physical location as required by the ADA. *Id.*

Similar pleading deficiencies are present here. Plaintiff cannot cure this deficiency because injury under the ADA cannot be defined without an inability to access, or deterrence from, a *physical space* rather than a website. *Id*. In his own words, Plaintiff does not seek access to a physical location, and is not deterred from a physical location, but instead pleads injury as to the website. If Plaintiff does not seek access, or plead injury, relating to a physical accommodation, even if via a website, the ADA does not apply.

With respect to dismissal with prejudice, it is worth noting that Plaintiff has repeatedly failed to make the nexus between a website and an intent to patronize the place of physical location in similar complaints, resulting in dismissal due to lack of standing in federal courts. In *Gomez v. Bang & Olufsen America, Inc.* 2017 WL 1957182, Plaintiff's case alleging ADA protections under Title III was dismissed because Plaintiff could not draw the requisite nexus between the Bang & Olufsen ("B&O") website and their physical retail stores. Although the B&O website allows website visitors to browse items available for sale at the B&O physical retail stores, find addresses of the physical stores, and permits customers to make appointments with sales staff *at* the local retail stores – (all of which are more robust connections to a physical location than available on the Hoopes website) – plaintiff could not demonstrate that he, personally, suffered any harm (1) at any of the physical stores (2) as a result of his alleged unequal access on the website. *Id*.[1] Plaintiff has ample experience with bringing suit, and logically should be obligated, as any Plaintiff, to properly plead injury or suffer dismissal. In this very context, Plaintiff has again failed to satisfy this constitutional requirement.

> c. Plaintiff does not create establish a nexus between the website barriers a personal injury.

To satisfy Article III standing, Plaintiff "must himself suffer an injury as a result of [defendant's] noncompliance with the ADA so as to be harmed in a "personal and individual" way. *Lujan*, 504 U.S. at 560. A Plaintiff cannot establish standing by alleging potential violations in the abstract; rather, Plaintiff must establish a nexus between the alleged ADA violation and *his personal* inability to access a place of physical accommodation. Plaintiff fails to establish a nexus in two ways: first, Plaintiff merely enumerates a list of alleged barriers to website accessibility without connecting the barriers to his personal inability to enjoy "full and equal access" of Defendant's goods and services. Second, Plaintiff fails to establish a nexus between the website barriers and access to a physical location: just because Plaintiff could not navigate a website with the same acuity as someone without a seeing disability does not necessarily prove that Plaintiff was prohibited from "full and equal access" of the physical location *connected to that website.*

---

[1] The Court may also take Judicial Notice that Plaintiff noted, in that case, that "travelling outside the home" is "difficult and frightening." (*Id*. at *3.) The court concluded that plaintiff's communicated fear of traveling outside his home, *locally*, reduced the weight of his statements of intent to patronize a physical store associated with a website, as required for standing under the ADA. *Id*. If the court found that Plaintiff was uncomfortable traveling to a store local to his home in South Florida, it is hard to imagine how a proposed hypothetical trip to Northern California could satisfy standing here. Plaintiff's unwellness to travel within Miami, disrupting standing as to local stores, it is relevant to whether Plaintiff can reasonably establish standing *here*.

POINTS AND AUTHORITIES TO DEFENDANT'S MOTION TO DISMISS

CASE NO. 3:21-CCV-08776-EMC

11

The former nexus is required of any ADA claim, whereas the failure to plead the second nexus is fatal to an ADA claim predicated on website inaccessibility.

It is well settled that a "barrier" will only amount to injury if it affects the plaintiff's full and equal enjoyment of the facility on account of his particular disability. *Chapman,* 631 F.3d at 947. Plaintiff summarily states that Defendant's website contains accessibility flaws, including form elements, less than ideal light/dark contrast, and lack of text equivalent for images. Compl., ¶ 18(b). Plaintiff never avers, however, *how* these barriers disabled him, personally, from accessing Defendant's place of public accommodation. The mere recitation of would-be, or could-be, ADA violations is not sufficient to demonstrate that Plaintiff personally suffered injury due to their existence. Because constitutional injury must be particular and individualized to establish standing, Plaintiff must establish a nexus between the barrier and his personal inability to gain full and equal access. Stated another way, it is not enough that *someone* might be disabled from full and equal access as a result of access barriers. To establish standing, Plaintiff must connect the alleged barriers to *his* inability to enjoy full access of a physical premise.

The ADA does not specifically describe which features are required to make a website accessible, and the Department of Justice has not yet issued guidelines for website accessibility. The regulations broadly require public accommodations to "furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c)(1). The World Wide Web ("W3C") consortium is a private organization that develops website standards. See, *Langer v. Pep Boys, Manny Moe & Jack of California,* No: 20-cv-06015-DMR, 2021 WL 148237, at *5 (N.D. Cal. Jan. 15, 2021); *Robles,* 913 F.3d at p. 902. Though the WCAG are "private, unenforceable guidelines," *Robles,* 913 F.3d at 907, they are instructive. That said, ADA "injury" is not established in the abstract. The ADA does not require places of public accommodation to create full-service websites for disabled persons. There is no ADA "rule" or "guideline" with respect to a specific standard of website accessibility. Rather, the ADA protects individuals who demonstrate that they were denied access *because of* their disability in connection with specific barriers they encountered, whatever they may be.

*Chapman* is controlling and instructive. In *Chapman,* the plaintiff was physically disabled, and visited the defendant's premises. The plaintiff identified various ADA violations, listed by reference to the California Building Code and the ADAAG, but did not define *what* about the barriers made them barriers to *his* full and equal enjoyment of the Pier 1 store. The court found that a list of ADA violations – which amounted to *could-be ADA violations* in the *abstract* – were

insufficient to establish subject matter jurisdiction. *Id.* at p. 955. The list of ADA violations did not substitute for the "factual allegations required … to satisfy Article III's requirement of injury-in-fact." *Chapman, supra,* and at p. 954. The court denied the plaintiff standing and dismissed the case pursuant to 12(b)(1) for lack of subject matter jurisdiction. To establish injury, the court noted, a plaintiff must identify *how* a claimed violation prevented *his* full access to the location.

This case is materially indistinguishable from *Chapman* insofar as Plaintiff enumerated various could-be website accessibility violations but failed to establish a factual basis demonstrating he suffered injury as a result of them. Plaintiff does not link the three enumerated website "accessibility design flaws" to any specific standards of accessibility for website compliance; thus, Defendant can only assume they are valid barriers to accessibility *in the abstract* for the seeing impaired. But, injury here would require Plaintiff to identify how the barriers prohibited him from "full and equal" access of a physical accommodation at Hoopes Vineyard, not just on the website. Plaintiff's inability to navigate a website does not, by itself, prove that Plaintiff was unable to avail of the goods and services of a place of public accommodation.  Thus, the complaint here is even more constitutionally inadequate than the subject of *Chapman* because Plaintiff does not link the flaws to a physical space *or* identify how they disabled his full enjoyment of that space.

To illustrate, the *Chapman* court noted that a quadriplegic would not likely be able to allege the same barriers as someone who is seeing impaired. While this is a dramatic example, it is worth noting that Plaintiff never claimed he could not access Defendant's physical location. Surely there are varying degrees of visual acuity, and Defendant's desire to navigate a website more "successfully" does not inform whether he could actually avail of goods and services through the website, which is required to prove injury. Plaintiff never states why, how, or what he was prohibited from doing; thus, Plaintiff does not provide evidence that the barriers caused *him* injury. While they may have amounted to injury as to a theoretical plaintiff, Plaintiff does not identify how they amounted to injury *as to him*.

Plaintiff's list is nothing more than an inadequate "audit" of Defendant's website, similar to the "survey" criticized in *Chapman.* Even assuming the flaws enumerated are violations of the WCAG, in the abstract, Plaintiff still must establish that the barriers prevented him, individually, from full access to a physical space. Plaintiff's generalized grievances fail to establish personal injury, so Plaintiff lacks standing as to this element as well. The Complaint must be dismissed.

**B.**  Plaintiff's complaint Fails to State a Claim Upon Which Relief Can Be Granted; thus, the Entire Complaint Should Be Dismissed.

Dismissal pursuant to Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a legal theory. *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). Despite the liberal pleading requirements, a Plaintiff must nevertheless provide sufficient factual evidence to "state a claim of relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

Material facts must generally be accepted as true and construed in the light most favorable to the nonmoving party, *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996), however, (1) courts can refuse to adopt legal conclusions or restatements of elements of a cause of action, supporting by mere conclusory statements;" and (2) a complaint will only survive a motion to dismiss if a complaint states a plausible claim for relief with "well-pleaded facts demonstrating the entitlement to relief." *Id*. at 678-79. The Court must disregard allegations that are legal conclusions, even when disguised as facts, *Iqbal, supra,* 556 U.S. at 678, and recitals of the elements of a cause of action, supported by mere conclusory statements. *Id*. at 668.

When ruing on a Rule 12(b)(6) motion to dismiss, a court may, without converting the motion to a motion for summary judgment, consider documents attached to the complaint, incorporated by reference to the complaint, and matters of judicial notice. *U.S. v. Ritchie* 342 F.3d 903, 907-908 (9th Cir. 2003).

Plaintiff pleads no facts that support his threadbare conclusion that the alleged barriers on the website prevented Plaintiff from full and equal access to a physical location associated with Hoopes Vineyard. It is well-settled that conclusory allegations of discrimination are not sufficient to satisfy the constitutional pleading burden. *Whitaker, supra*, at p.  Taken together, Rule 8, *Iqbal* and *Twombly* demand that a plaintiff plead facts and not legal conclusions. *Twombly,* 550 U.S. at 570. The law demands sufficient factual "enhancement"; otherwise, the complaint does not "cross the line between possibility [to] probability." *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995-97.

Civil Rights litigants are not exempt from the *Iqbal* pleading standard, and discovery cannot cure plaintiffs pleading deficiencies as a matter of law. *Iqbal*, *supra*, 556 U.S. at 678-79. "Rule 8 … does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. *Iqbal* and *Twombly* set the bar for assessing compliance with the pleading standards in ADA suits, as with all other contexts, and previous decisions deviating from the *Iqbal* threshold are obsolete. *Whitaker, supra*, at p. *13.

Plaintiff's complaint primarily recites legal conclusions. Namely, Plaintiff summarily alleges that he has been "denied full use and enjoyment of the facilities, goods and services offered by Defendants as a result of the accessibility barriers on the website." Comp., at ¶ 21. Plaintiff does not identify what goods and services he could not access, or factually describe how barriers disabled access to them. All statements of inaccessibility are bald conclusions. For example, Plaintiff states that "inaccessible elements rendered the ostensibly 'accessible' elements inaccessible." Plaintiff never identifies what those elements were, nor does he connect them to a physical location. Every allegation in the Complaint is a legal conclusion, or recitation of the elements, without any factual elaboration whatsoever.

In *Whitaker v. Tesla Motors, Inc*. D.C. 2:19-cv-06605, (9th Cir. January 25, 2021), the court ruled that a materially carbon-copy of the complaint at issue here was properly dismissed for failure to allege facts sufficient to support his ADA claim. The complaint summarily alleged that defendant "failed to provide accessible service counters" he "personally encountered" upon visiting the facility, thus, had been denied "full and equal access" to the Tesla Facility. *Whitaker*, supra, at *8. The statements were deemed legal conclusions, did "little more than recite the elements of an ADA claim," and fell "short of putting [the defendant] on notice of how the counters prevented Whitaker from full and equal access." The court noted that bald assertions in the complaint failed to answer even basic questions relating to the "inaccessible counters" such as: were they "too low? Or too high? Where they positioned in an area that was inaccessible for another reason?" The court accordingly concluded that he defendant, and the court, were "left in the dark" about what made the barrier "deficient" and how that barrier denied plaintiff "full and equal enjoyment of the premises." *Whitaker*, supra, at *8

The statements justifying dismissal in *Whitaker* are nearly identical to the complaint at issue in this case. Plaintiff states that he was "denied full and equal access" without describing what the limitation to his access was, let alone what he was attempting to access in the first instance. Just as the court suggested in *Whitaker*, Plaintiff could have easily described what service he attempted to make use of, or which physical location he attempted to access. Plaintiff does not even make a singular factual statement as to any of the elements in the complaint, what he hoped to access, or why he could not access them. The Complaint does not provide adequate notice of his grievance and amounts to nothing more a bald assertion that Defendant caused harm, without more. The Complaint should therefore be dismissed for failure to state a claim under Rule 112(b)(6).

**C.** Plaintiff's Unruh Act Claims Should Be Dismissed for lack of Supplemental Jurisdiction.

Rule 12(b)(1) allows a defendant to seek dismissal of a claim or lawsuit by asserting the defense of lack of subject matter jurisdiction. "If the court determines at any time that it lacks subject matter-jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). The court retains discretion over whether to exercise supplemental jurisdiction over related state law claims pursuant to 28 U.S.CC. § 1367(a). Under 28 U.S.C. § 1367(c), "district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." However, supplemental jurisdiction may be declined if any of the exceptions in § 1367(c) apply:

(1) The claim raises a novel or complex issue of State law;

(2) The claim substantially predominates over the claim or claims over which the district court has original jurisdiction;

(3) The district court has dismissed all claims over which it has original jurisdiction; or

(4) In exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Under § 1367(cc), a "district court can decline jurisdiction under any one of [the statute's] four provisions." *San Pedro Hotel v. City of L.A.*, 159 F.3d 470, 478  (9th Cir. 1998). A district a court's discretion to decline supplemental jurisdiction is triggered upon the presentation of a "factual predicate that corresponds to one of the §1367(c) categories." *Feezor v. Tesstab Operations Group, Inc.*, 524 F.Supp.2d 1222, 1225 (S.D. Cal. 2007). The predominance of the state law claims and the conflict in pertinent state law are such factual predicates. *Ibid*.

State issues substantially predominate, for purposes of §1367(c)(2), when, "[i]n terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state law claims may be dismissed without prejudice and left for resolution to state tribunals." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726.

With increasing frequency recently, California District Courts recognized that the presence of a claim for statutory damages under Unruh is sufficient for a finding that state law claims predominate over ADA claims. See, *e.g., Whitaker v. Starbucks Corporation*, 2:20-cv-00111-RGK-JC, ECF Dkt. No. 16 (C.D. Cal., February 20, 2020); *Whitaker v. Tesla Motorrs Inc.*, 3:19-

cv-01193-AJB-BLMM, 2020 WL 2512205, at *304 (S.D. Cal., May 15, 2020); *Garcia v. Sunshine,* cv-20-2476, 2020 WL 6694352 (C.D. Cal. August 12, 2020). In *Schutza v. Cuddeback*, a plaintiff with physical disabilities brought ADA and Unruh claims, alleging he was unable to access or use defendant's property because of various access barriers, including inaccessible counters for persons with wheelchairs. 262 F.Supp.3d 1025, 1030 (S.D. Cal. 2017). The court declined jurisdiction over plaintiff's Unruh claim in part, because 'the monetary damages sought by Plaintiff under the Unruh Act substantially predominate over federal injunctive relief." *Ibid*.; *see also Organization for Advancement of minorities with Disabilities v. Brick Oven Restaurant*, 406 F.Supp.2d 1120, 1132 (S.D. Cal. 2005) (finding that claim for statutory damages under the Unruh Act substantially predominate over ADA claim for injunctive relief).

In this case, Plaintiff's state law claims similarly predominate over his federal ADA claims. First, Plaintiff may seek injunctive relief under both the ADA and Unruh Act. But only under the Unruh may the Plaintiff, as he does here, seek statutory damages. Courts have held that the more expansive remedies provided under Unruh means that the state law claims predominate. *Langer v. Honey Baked Ham, Inc*., No. 3:20-cv-1627-BEN-AGS, 2020 WL 6545992, at *8 (S.D. Cal. November 6, 2020).

Second, the state law claim predominates because the recovery under Unruh requires additional proof not required under the ADA. To recover damages under Unruh, Plaintiff must prove that he personally encountered the alleged barrier. Under the ADA, a plaintiff 'need not have personally encountered all the barriers that impede his access … in order to seek an injunction to remove those barriers." *Chapman,* 631 F.3d at 951. In addition, a violation of the ADA violates the Unruh Act, but a violation of the Unruh Act does not necessarily violate the ADA. Further, a violation of the ADA does not require intentional discrimination but a claim under the Unruh Act may require such intent. Thus, intent to discriminate would only be relevant to Plaintiff's Unruh claims and would require application of state law standards. *Langer*, 2020 WL 6545992, at *8. The differing levels of proof between Unruh and the ADA is sufficient to support a conclusion that state law claims predominate. *Feezor v. Tesstab Operations Group, Inc.*, 524 F.Supp.2d 1222, 1222-1226 (S.D. Cal. 2007). Accordingly, the Court should decline to exercise supplemental jurisdiction.

Upon dismissal of the federal ADA claim, the Court should decline to exercise supplemental jurisdiction over the Unruh claim as state law claims should generally be dismissed if federal claims are dismissed before trial. *See Acri v. Varian Assocs., Inc.,* 114 F.3d 999, 1000

(9th Cir. 1997). Even assuming the Court declines to dismiss Plaintiff's ADA claims, the Court should nonetheless decline to exercise supplemental jurisdiction because Plaintiff's state law claims predominate.

## II. **CONCLUSION**

For all the foregoing reasons, this Court should grant Defendant's Motion to Dismiss *with prejudice*, as there is no possibility of curing the Complaint.

Respectfully submitted:

Dated: 2/1/2022                                              BY: /S/ Lindsay Hoopes

                                                                   _____

                                                                   Lindsay Hoopes, Esq.
                                                                   Attorney for Defendant
                                                                   HOOPES VINEYARD, LLC